**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TOMPKINS, INC.,

                Plaintiff,             Case No. 2:24-cv-10510

v.

                                     Hon. Brandy R. McMillion
                                     United States District Judge

WLAJ-TV, LLC, *et al.*,

                Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTIONS FOR JUDGMENT
ON THE PLEADINGS (ECF NOS. 32, 37)**

In this action, Plaintiff Tompkins, Inc. ("Tompkins") now proceeds against Defendants WLAJ-TV LLC ("WLAJ-TV") and Sinclair Communications, LLC ("Sinclair") (collectively "Defendants") for breach of contract, conversion of property, a holdover tenancy, and unjust enrichment. *See generally* ECF No. 28. Before the Court are the Defendants' Motions for Judgment on the Pleadings, pursuant to Federal Rule 12(c). ECF Nos. 32, 37. Both Motions are fully briefed, so the Court finds oral argument unnecessary and will rule based on the record before it. ECF Nos. 35, 36, 39, 40; E.D. Mich. L.R. 7.1(f). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Judgment on the Pleadings (ECF Nos. 32, 37).

1

**I.**

A landlord-tenant relationship spanning over 40 years brought the parties into court.  The operative Lease Agreement (hereinafter the "Lease" or "Lease Agreement") was entered into on March 1, 2013, between Plaintiff Tompkins and Defendant WLAJ-TV.  *See* ECF No. 28, PageID.494.  The original lease, dated January 25, 1982, was amended, assumed, and assigned several times after its inception, resulting in the current Lease Agreement.[1]  The Lease has always covered land located at 4543 Baseline Road, Rives Junction, Michigan, which was used "to transmit communications signals for a television studio and tower."  *Id*. at PageID.506, 559.  Over time, the property at issue has included the land, building, satellite, fencing, generator, transmitter, and all other property on the land.  *Id*. at PageID.495-496.  The parties conducted business in this manner for years, until

---

[1] Tompkins and WLAJ-TV LLC (successor by assignment to Freedom Broadcasting of Michigan, Inc.) are parties to that certain Lease, dated as of January 25, 1982 (the "Original Lease"), as amended by an Amendment to Lease Agreement dated August 21, 1984 (the "First Amendment"), as amended by the Second Amendment to Lease Agreement entered June, 1990 (the "Second Amendment"), Consent and Acknowledgment dated June 5, 1990 (the "Consent and Acknowledgment"), Third Amendment to Lease Agreement dated December 27, 1990 (the "Third Amendment"), and Fourth Amendment to Lease Agreement dated October 25, 1995 (the "Fourth Amendment"), Assignment and Assumption of the lease dated August 19, 1998, from Tenant Lansing 53 to WLAJ to Freedom Broadcasting of Michigan, Inc., assignment of rights under lease dated December 6, 1999, by Robert P. Benko, Mary Benko, George E. Benko, and Ella F. Benko to Tompkins, Fifth Amendment to Lease Agreement dated January 12, 2012 and effective January 1, 2012 (the "Fifth Amendment"), Assumption Agreement dated December, 2012, between Tompkins and Sinclair Communications, LLC, and Assumption and Consent Agreement dated as of March 1, 2013, by and between Tompkins, Inc. (Landlord) and WLAJ-TV LLC (Tenant) and executed by Sinclair as Guarantor.  *See* ECF No. 28, PageID.494-495, ¶13.

2

WLAJ-TV decided not to renew its lease in December 2022.  That's when the issues of conversion and contractual breach arose.

Several provisions of the Lease Agreement are relevant here.  First, paragraph 15 of the Lease Agreement states:

> (15) Except as provided in Paragraph 13 hereof, the Tenant further covenants and agrees that he will, at his own expense, during the continuation of this lease, keep the said premises and every part thereof in as good repair and at the expiration of the term yield and deliver up the same in like condition as when taken, reasonable use and wear thereof and damage by the elements excepted. The Tenant shall not make any alterations, additions or improvements to said premises without the Landlord's written consent, and all alterations, additions or improvements made by either of the parties hereto upon the premises, except movable office furniture and *trade fixtures put in at the expense of the Tenant*, shall be the property of the Landlord, and shall remain upon and be surrendered with the premises at the termination of this lease, without molestation or injury.

> The Tenant covenants and agrees that if the demised premises consist of only a part of a structure owned or controlled by the Landlord, the Landlord may enter the demised premises at reasonable times and install or repair pipes, wires and other appliances or make any repairs deemed by the Landlord essential to the use and occupancy of other parts of the Landlord's building.

ECF No. 28, PageID.535 (emphasis added).  Second, paragraph 3 of the Fifth Amendment to the Lease Agreement required rent to be paid in accordance with the following terms:

(b) <u>Rental.</u> Tenant-covenants and agrees to pay to Landlord as rental for said premises an annal rent equal to Seventy-Three Thousand Six Hundred Sixty-Two Dollars and 12 cents ($73,662.12), payable in equal monthly installments of Six Thousand One Hundred Thirty-Eight Dollars and 51/100 ($6,138.51).

The rental shall be adjusted annually commencing July 1, 2012, by adding to the base rate existing as of the date of the adjustment an amount equal to the percentage change in the Consumer Price Index All Urban Consumer (CPIU) U.S. City Average, for the prior 12 month period, multiple times the base rate of Seventy-Three Thousand Six Hundred Sixty-Two Dollars and 12 cents ($73,662.12). The new rental is herein referred to as the Adjusted Base Rental. In each subsequent year on the first day of July, the rental adjustment shall be calculated upon the prior Adjusted Base Rental and the CPIU shall be the twelve month period prior. The calculation of each (CPIU) rental adjustment shall in no case be calculated to reduce the adjusted based rental from the prior period.

ECF No. 28, PageID.563-564.  Third, paragraph 23 of the Lease Agreement governed holdover tenancy as follows:

It is hereby agreed that in the event of the Tenant herein holding over after the termination of this lease, thereafter the tenancy shall be from month to month in the absence of a written agreement to the contrary.

*Id.* at PageID.536.  Fourth, paragraph 2(a) of the Fifth Amendment to the Lease Agreement governed the terms of subtenancy and subleasing as follows:

In the event Tenant subleases the tower then the Landlord shall be entitled to a payment from Tenant for 50% of the gross proceeds. The term gross proceeds within this paragraph refers to any and all monies which Tenant receives directly or indirectly from the subleases. Further,

> Tenant is prohibited from receiving any monies from subleases and re-classifying those monies as anything but "gross proceeds". The Tenant shall no longer receive 20% for operating expenses. The sublease rent shall be adjusted annually on the first of July in conformance with paragraph 3(b).

*Id*. at PageID.564.

These terms of the Lease, as amended and assigned, form the basis, in part, of Tompkins' claims against the Defendants.  The Complaint alleges the following:

(1) *Conversion & Breach of Contract*: WLAJ-TV removed all personal property, the transmitter, and communication equipment, including the generator, from the building (Counts I[2], II[3], VIII[4], IX[5]);

(2) *Breach of Contract*: WLAJ-TV failed to pay rent under the terms of the Lease in December 2022 when a rent check did not clear its financial institution; and WLAJ-TV failed to pay rent as a holdover tenant from January 1, 2023 to April 6, 2023 (Counts III[6], IV[7]);

(3) *Breach of Contract*: WLAJ-TV failed to maintain the premises (Count V[8]); and

---

[2] ECF No. 28, PageID.502.
[3] *Id.* at PageID.505.
[4] *Id.* at PageID.520.
[5] *Id.* at PageID.522.
[6] *Id.* at PageID.509.
[7] *Id.* at PageID.510.
[8] *Id.* at PageID.512.

(4) *Conversion, Breach of Contract*: WLAJ-TV allowed WLNS-TV to broadcast from the tower governed by the Lease; and WLAJ-TV failed to pay rent from the subletting of the tower from June 2018 to January 2020 (Counts VI[9], VII[10]).

(5) *Unjust Enrichment*: As an alternative to all other counts, WLAJ-TV was unjustly enriched by the actions that form the basis of the breach of contract and conversion claims (Count X[11]).

(6) *Breach of Contract/Guaranty*: Sinclair breached its obligations to Tompkins when it failed to pay for the amounts due on WLAJ-TV's behalf (Count XI[12]).

*See generally* ECF No. 28.

This case was timely removed from the Jackson County Circuit Court. *See* ECF No. 1. Previous Defendants Mission Broadcasting, Inc. and Nexstar Media Inc. filed a Motion to Dismiss, which the Court granted. ECF No. 14; ECF No. 21. Subsequent to their dismissal, Tompkins filed a First Amended Complaint ("Amended Complaint") against WLAJ-TV and Sinclair. ECF No. 28. Defendants WLAJ-TV and Sinclair have filed Answers and now move for Judgment on the

---

[9] ECF No. 28, PageID.514.
[10] *Id.* at PageID.516.
[11] *Id.* at PageID.525.
[12] *Id.* at PageID.530

Pleadings under Rule 12(c).[13]  ECF Nos. 13, 15, 32, 37.  Both motions have been fully briefed, and the Court will rule on the record before it in lieu of holding a hearing.  *See* ECF Nos. 35, 36, 39, 40; E.D. Mich. LR 7.1(f).

## II.

In evaluating a Rule 12(c) motion for judgment on the pleadings, the Court applies the same standard it uses to evaluate a Rule 12(b)(6) motion to dismiss. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020); *Bolone v. Wells Fargo Home Mortg., Inc.*, 858 F. Supp. 2d 825, 830 (E.D. Mich. 2012); *see also E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).  Courts must view the pleadings in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgement as a matter of law.  *See Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

A complaint must contain sufficient facts to "state a claim to relief that is plausible on its face" to survive a motion to dismiss.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  At this stage, a probability requirement is not imposed; rather merely enough facts need to be pleaded to raise a "reasonable expectation that

---

[13] Defendants' Motions raise several similar arguments asserted by Defendants Nexstar Media, Inc. and Mission Broadcasting, Inc. in their Motion to Dismiss.  *Compare* ECF No. 14 with ECF Nos. 32, 37.  The Court previously dismissed all claims against Nexstar and Mission in its Opinion and Order Granting Defendants' Motion to Dismiss (the "Prior Dismissal Order").  *See* ECF No. 21.  Where appropriate the Court will identify those similar findings herein.

discovery will reveal evidence of illegal [conduct]." *Id.* at 556.  The Court need not accept as true legal conclusions or unwarranted factual inferences.  *Mixon v. State of Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).

A motion for judgment on the pleadings may be granted only if the moving party is nevertheless clearly entitled to judgment.  *Moore, Successor Tr. of Clarence M. Moore & Laura P. Moore Tr. v. Hiram Twp., Ohio*, 988 F.3d 353, 357 (6th Cir. 2021) (citation omitted).  The court may consider "any exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein."  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## III.

The Defendants' Motions allege that, as a matter of law, they are entitled to judgment and dismissal of the claims against them because Tompkins failed to sufficiently plead claims for conversion, breach of contract, and unjust enrichment.[14] *See generally* ECF Nos. 32, 37.  The Court will address each claim in turn.

---

[14] Plaintiff alleges that because Sinclair, as guarantor of the Lease Agreement (*see* ECF No. 28, PageID.569) agreed to remain fully liable for the terms of the Lease, Sinclair is a proper party to this dispute; and if WLAJ-TV is found liable for any injury resulting from the Lease Agreement, Sinclair would also be liable.  *See* ECF No. 39, PageID.821.  If the jury were to find liability, the Court agrees with respect to the breach of contract claims.  *See Wallace Hardware Co. Inc. v. Abrams*, 223 F.3d 382, 401 (6th Cir. 2000).  Consequently, any refence to WLAJ-TV throughout this Order, necessarily includes Sinclair, unless otherwise specified.

### A.     CONVERSION CLAIMS

Counts I, II, and VI allege claims for conversion of property and money against the Defendants.  *See* ECF No. 28, PageID.502-508, 514-516.  Tompkins alleges WLAJ-TV converted an industrial generator and transmitter/communication equipment when it removed these items from the premises of the leased property, and also converted money when it refused to pay rent from WLNS-TV's use of the communication tower.  *See* ECF No. 28, PageID.502, 505, 514-515.  Tompkins alleges that because Sinclair was the guarantor of WLAJ-TV's performance under the lease, they are similarly liable for the conversion claims.  *Id.* at PageID.504, 508, 516.

WLAJ-TV, in response, argues these claims fail as a matter of law because (1) they are barred under the statute of limitations; (2) they are barred by the economic loss doctrine; (3) the conversion of rent is insufficiently pled under Michigan law; and (4) Plaintiff fails to allege any wrongful dominion over the property under Michigan law.  *See* ECF No. 32, PageID.718-726.  Sinclair makes similar arguments but also states that Plaintiff fails to allege any act on their part that would justify tolling the statute of limitations as to these claims.  ECF No. 37, PageID.806-811; *see also* ECF No. 40, PageID.875.

Tompkins asserts the conversion claims under both common law and Michigan statutory authority.  Claims for common law and statutory conversion

9

"arise[] from 'any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'" *Franklin Cap. Fund., LLC v. Austin Bus. Fin., LLC.*, 676 F. Supp. 3d 515, 529 (E.D. Mich. 2023) (citing *Aroma Wines & Equip, Inc. v. Columbian Dist. Servs., Inc.*, 871 N.W.2d 136, 144 (Mich. 2015)); *Rice v. Music Royalty Consulting, Inc.*, 397 F. Supp. 3d 996, 1010 (E.D. Mich. 2019) (citing *Bain v. Baker's Choice Co.*, Nos. 216836, 215274, 2001 WL 826104, at *8 (Mich. Ct. App. July 20, 2001)).  "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Dep't of Agric. v. Appletree Mktg. LLC*, 779 N.W.2d 237, 244-45 (Mich. 2010).

Comparably, Michigan's conversion statute provides relief for two distinct areas:

a. Another person's stealing or embezzling property or converting property to the other person's own use; and

b. Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled or converted.

MICH. COMP. LAWS § 600.2919a.  Statutory relief also requires Tompkins to demonstrate the defendants had actual knowledge of the converting activity.  *See Nedschroef Detroit Corp. v. Bemas Enter. LLC*, 106 F. Supp.3d 874, 886 (E.D.

10

Mich. 2015).  Here, however, neither form of relief is available to Tompkins because the statute of limitations has run and now bars the conversion claims.

As stated in the Court's Prior Dismissal Order, both common law and statutory conversion claims are subject to a three-year statute of limitations.  *See Rice*, 397 F. Supp. 3d, at 1010 (citing MICH. COMP. LAW § 600.5805(10)).  However, Tompkins again asserts equitable tolling because it alleges that the facts of the underlying conversion claim were concealed when the defendants "refused to give the access code and building key to [Tompkins] thereby preventing [Tompkins] from inspecting the property."  *See* ECF No. 35, PageID.759.  The Court finds this insufficient to invoke the equitable tolling exception, especially in reference to Sinclair.

"For the fraudulent-concealment exception to apply, a 'plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment' and 'prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery.'"  *Mays v. Snyder*, 916 N.W.2d 227, 250-51 (Mich. Ct. App. 2018).  "Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action.  The acts relied on must be of an affirmative character and fraudulent."  *See Tonegatto v. Budak*, 316 N.W.2d 262, 266 (Mich. Ct. App. 1982).

First, as the Court has previously ruled, the Complaint must state with specificity facts that point to the particular actions of a defendant in order to invoke fraudulent concealment.  *See* ECF No. 21, PageID.407.  Here, Tompkins' Amended Complaint says nothing with respect to Sinclair's actions, other than it guaranteed the Lease Agreement.  ECF No. 28 at PageID.504, 508, 516.  This is simply not enough.  Further, as Sinclair asserts in its reply brief, it raised this argument and specifically asserted that the "Amended Complaint runs contrary to Michigan conversion law, since it is devoid of any plausible allegation that Sinclair engaged in tortious conduct;" and Tompkins failed to address this argument.  ECF No. 40, PageID.873-876 (citing *Aroma Wines & Equip, Inc. v. Columbian Dist. Servs., Inc.*, 871 N.W.2d 136, 144 (Mich. 2015)).  Failing to address an argument raised is deemed a waiver, and therefore judgment in favor of Sinclair on the conversion claims is warranted.  *See Sault St. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (failure to address an issue constitutes a waiver or abandonment of the argument).

As to WLAJ-TV, while Tompkins alleges WLAJ-TV prevented it from accessing the property, *see* ECF No. 35, PageID.752, it fails to plead sufficient facts that justify tolling of the statute of limitations.[15]  Although the Lease Agreement

---

[15] The Court notes the Lease Agreement gave Tompkins "the right to enter upon the leased premises at all reasonable hours for the purpose of inspecting the same."  *See* ECF No. 28,

granted WLAJ-TV access and temporary control over the property, Tompkins always maintained ownership of the leased premises.  Tompkins therefore could have taken action to access the premises when it alleged the keys were withheld. Nonetheless, if something was wrongfully taken off the property without Tompkins' knowledge during the term of the lease, once Tompkins had access to the property— which WLAJ-TV alleges was on December 4, 2020 when it vacated the premises and gave Tompkins a key (*see* ECF No. 32, PageID.719 (citing ECF No. 31, PageID.667)), Tompkins would have been aware of the removal and the statute of limitations period would have begun.[16]  That means that any claim for conversion had to be filed before December 4, 2023; and this case was not initiated until December 15, 2023.  The conversion claims against WLAJ-TV are therefore untimely.

Similarly, the conversion of money claim relating to the use of the communication tower without payment of rent is also untimely.  Tompkins alleges that WLAJ-TV allowed WLNS-TV to broadcast from the communication tower from June 2018 to January 2020.  ECF No. 28, PageID.515.  As held in the Previous

---

PageID.536.  This is an enforceable provision that could have been exercised at any time, and no facts have been alleged to explain that it was an unavailable option for Plaintiff.

[16] Tompkins does not dispute that it gained access to the premises on December 4, 2020.  Instead, it argues that WLAJ-TV admits that it did not provide Tompkins with notice of removal during the lease term.  *See* ECF No. 35, PageID.759.  But this does not address the issue of actual notice when it was granted access to the premises.

Dismissal Order, Tompkins claims therefore they needed to be brought by January 2023. Because they were not filed until December 2023—almost a full year past the deadline—the Court finds that claim is barred by the applicable limitations period, and subject to dismissal. *See* ECF No. 21, PageID.407-408.

Consequently, Tompkins' conversion claims are barred under the statute of limitations. The Court need not reach a decision on the applicability of the economic loss doctrine or the sufficiency of the claims themselves, given this separate basis for dismissal.

## B. BREACH OF CONTRACT CLAIMS

Counts III, IV, V, VII, VIII, and IX assert specific claims for breach of contract. According to Tompkins, a breach occurred when Defendants (1) failed to pay the December 2022 rent (Count III), (2) remained a holdover tenant (Count IV), (3) failed to make recommended repairs from an independent professional inspection (Count V), (4) subleased the antenna to a third party (Count VII), and (5) removed a generator and broadcast transmitter (Counts VIII and IX). *See generally* ECF No. 28. Defendants seek dismissal, asserting each claim fails as a matter of law.

Contract interpretation is a matter of law. *See Sweebe v. Sweebe*, 712 N.W.2d 708, 711 (Mich. 2006). Under Michigan law, Lease Agreements are interpreted like any other contract. *See In re Smith Trust*, 745 N.W.2d 754, 757-58 (Mich. 2008). "A party asserting a breach of contract must establish by a preponderance of the

evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014). Here, Tompkins asserts that various provisions of the Lease Agreement were breached by WLAJ-TV and the alleged breaches resulted in damages to Tompkins.

### 1.     December 2022 Rent (Count III)

In Count III, Tompkins claims breach of the Lease Agreement because WLAJ-TV failed to tender the proper amount for payment of December rent. *See* ECF No. 28, PageID.509-510. Tompkins states that WLAJ-TV tendered an original check for December 2022 rent in the amount of $9,705.98 which was endorsed and deposited to the bank, but ultimately the bank denied the check and charged Tompkins a $10 service fee. *Id.* at PageID.509. Tompkins claims as a result they are now owed $9,715.98. *Id.* Defendants counter stating that they promptly reissued a check to Tompkins, in the amount of $9,705.98, after they were made aware that the check was returned. ECF No. 32, PageID.726. Defendants argue that because the bank issue was due to no fault of their own, and Tompkins refused to deposit the reissued check, there can be no breach because Tompkins actions prevented performance of the Lease Agreement rent terms. *Id.* at PageID.727.

The Court first notes that the Lease Agreement is silent as to who is responsible for any dishonored check or bank service fees in terms of rent payments.

*See* ECF No. 28, PageID.563-564.  And while Tompkins alleges that in the past when WLAJ-TV had a check denied, they would forward a reimbursement check and include the bank fee, that does not create a contractual obligation to do so.  *See Grow v. Gen. Prods, Inc.*, 457 N.W.2d 167, 170 (Mich. Ct. App. 1990) (citing *Valentine v. Gen. Am. Credit, Inc.*, 362 N.W.2d 628 (1984)) ("Contractual obligations are founded upon agreement of the parties . . . . not upon uncompelled negative implications"); *see also K& M Real Estate, L.L.C. v. Rubloff Dev. Grp., Inc.*, Nos. 313892, 315479, 2014 WL 1051683, at *6 (Mich. Ct. App. Mar. 18, 2014) (modification of contractual terms requires mutual intention and assent)

Defendants are correct that by preventing a party from timely tendering payment forfeits the other party's right to claim breach.  *See* ECF No. 32, PageID.727 (citing *Olga's Kitchen v. Papo*, 815 F.2d 79 (6th Cir. 1987)).  Here, because Tompkins refused to deposit the reissued check (which was in the amount of the December 2022 rent), they forfeit the right to claim a breach of the rent terms in the Lease Agreement.  Thus, without an actual breach or damages, the facts underlying this allegation are insufficient to maintain a claim for breach of contract and judgment on the pleadings is appropriate.

### 2.    Holdover Tenancy (Count IV)

Count IV alleges WLAJ-TV breached the Lease Agreement for being a holdover tenant from January 1, 2023, until April 6, 2023.  ECF No. 28, PageID.510.

Tompkins alleges that WLAJ-TV delayed completing an FCC Antenna Registration change "until, on or about April 5, 2023," maintained control of the tower, and did not pay rent during that time. *Id.* Tompkins argues that "failing to make the registration change . . . rendered the property valueless until [it] was completed." ECF No. 35, PageID.765. Defendants argue that, since they no longer physically occupied the premises, a delay in filing paperwork with the FCC does not constitute holdover tenancy. *See* ECF No. 32, PageID.728-729. The Court agrees.

The Lease Agreement specifically states the following with respect to holdover tenancy:

> It is hereby agreed that in the event of the Tenant herein *holding over* after the termination of this lease, thereafter the tenancy shall be from month to month in the absence of a written agreement to the contrary.

ECF No. 28, PageID.536 (emphasis added). Under Michigan law, a "holdover tenant is someone remaining in a leased space after the expiration of the Lease Agreement." *Horton v. Gebolys*, No. 348461, 2020 WL 4236410, at *2 (Mich. Ct. App. July 23, 2020). Holdover tenancy not only centers on possession but also requires an intent to remain. *See Scott v. Beecher*, 52 N.W. 20, 21 (Mich. 1892); *Popovski v. NJ Enters., LLC*, No. 262309, 2006 WL 3421793, at *2 (Mich. Ct. App. Nov. 28, 2006).

Here, the Lease expired on December 31, 2022 and the Amended Complaint alleges no facts sufficient for the Court to plausibly find a holdover tenancy. That

the FCC registration was not completed until April 2023 is insufficient to establish possession or an intent to remain. *See, e.g.*, *Bingham Ctr. Owner, LLC v. Comcast of Fla./Mich./N.M./Pa./Wash., LLC*, 603 F. Supp. 3d 545, 549-550 (E.D. Mich. 2022). Tompkins points to the FCC's requirements for conducting a change in registration as proof of the holdover. *See* ECF 35, PageID.766, n.7. However, even considering that process, the facts fail to allege possession or intent. While it could be "possible" that WLAJ-TV could have continued to broadcast from the tower, there are no allegations to support that it was plausible that they remained on the premises. And "without some further factual enhancement [the claim] stops short of the line between possibility and plausibility of 'entitlement to relief.'" *See Twombly*, 550 U.S. at 557.

Therefore, this claim also fails as a matter of law and judgment on the pleadings is appropriate.

### 3. Maintaining the Premises (Count V)

Count V asserts WLAJ-TV breached the Lease Agreement by failing to maintain the property when it "learned that…WLAJ-TV… had an inspection performed of the tower … in 2014 and failed to make all of the recommend repairs." *See* ECF No. 28, PageID.513. According to Tompkins, this is a breach because WLAJ-TV failed to maintain the property and deliver it back to Tompkins "in like condition as when taken." *Id.* at PageID.512. Tompkins alleges that it has incurred

18

$197,831 in damages as a result of having to obtain a professional inspection and complete repairs identified therein.  *Id.* at PageID.513.

Defendants assert that Tompkins' claim fails because it cannot tie its expenses to any alleged breach of the Lease Agreement.  ECF No. 32, PageID.730-731.  And as pled, the Amended Complaint contains no allegations that the costs incurred by Tompkins occurred during the lease term.  *Id.*  Moreover, Defendants assert that the alleged repairs "may reflect Plaintiff's upgrade decisions" and not things they were responsible for maintaining.  *Id.*  The Court is not persuaded.

Viewing the facts in the light most favorable to Tompkins, as the Court is required to do at this stage, it is plausible that damage to the premises could have occurred as a result of Defendants' failure to maintain the premises.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Singerman v. Mun. Serv. Bureau, Inc.*, 565 N.W.2d 383, 386 (Mich. 1997). Tompkins alleges that it recently learned that a 2014 inspection revealed repairs that needed to be done, and Defendants failed to make those repairs.  ECF No. 28, PageID.513.  If taken as true, and Tompkins had to undergo expenses to make those repairs, the Court finds that sufficient to state a plausible breach of contract claim for failure to maintain the premises.[17]  The Lease Agreement required Defendants to

---

[17] The Court notes that at the summary judgment stage, this may be a different outcome.  If Defendants can show that the alleged repairs were merely upgrades or that the cost associated with

return the premises back to Tompkins in a like condition as when it was first leased, so failure to do so would equate to a breach.

Accordingly, Defendants' request for judgment as to Count V is denied; and that claim will proceed.

### 4. Sublease Rent (Count VII)

Count VII asserts a breach of contract claim for a failure to pay Tompkins sublease rent pursuant to a channel sharing agreement between WLAJ-TV and WLNS-TV.[18]  *See* ECF No. 28, PageID.516.  Defendants oppose this arguing that the channel sharing agreement with WLNS-TV was not a sublease, no rent was collected thereunder, and therefore no breach exists.  ECF No. 32, PageID.734.  Thus, this claim depends on whether the channel sharing agreement is the legal equivalent of a sublease agreement, subject to the Lease Agreement between WLAJ-TV and Tompkins.  The Court finds, as a matter of law, it is not.

Pursuant to Michigan law, a sublease is a transfer of the right of possession and use of the leased property to a third party (the sublessee) while the original lessee retains a reversionary interest in the lease.  *See Beck's Serv. Stations v. Sun Oil Co.,*

---

vegetation clearing was the result of land upkeep after the lease term ended, then summary judgment would be appropriate in their favor.  But that is a decision best left for summary judgment and not one for a motion for judgment on the pleadings.

[18] Contrary to Tompkins' assertions, Nexstar (WLNS-TV) and Mission are no longer parties to this litigation; they were dismissed due to insufficient facts pled against them.  *See* ECF No. 21.  Any argument attempting to relitigate that prior dismissal will not be reconsidered in evaluating the present motion against WLAJ-TV and Sinclair.

242 N.W. 890, 890 (Mich. 1932).   Under a sublease agreement, it is generally understood that the original tenant retains some interest in the lease term.  *See LaRose Market, Inc. v. Sylvan Ctr., Inc.*, 530 N.W.2d 505, 508 (Mich. Ct. App. 1995) (citation omitted).  However, there must be "exclusive possession or control" of a definite areas to create a sublease and not merely a license.  *United Coin Meter Co. v. Gibson*, 311 N.W.2d 442, 445 (Mich. Ct. App. 1981).

Here, WLAJ-TV retained all the rights of a tenant under the Lease Agreement when the channel sharing agreement was entered.   However, the Amended Compliant is void of any factual assertions that WLNS-TV occupied the premises in order to broadcast its station.  The Amended Complaint is also void of any facts that support a finding that WLAJ-TV collected any rent from WLNS-TV, or that the Lease Agreement imposed a duty on WLAJ-TV to do so.  Nothing in the factual assertions alleges that the Lease Agreement placed any restrictions on the use of the tower; and Tompkins concedes that WLAJ-TV owned a license that is shared with WLNS-TV.  ECF No. 35, PageID.771.  Despite Tompkins' contentions, *see* ECF No. 35, PageID.771, communication frequencies and physical infrastructure are not the same thing.  Without some allegation that WLNS-TV took "exclusive possession or control of the areas," the Court cannot plausibly infer a sublease from the channel sharing agreement.  *See United Coin Meter*, 311 N.W.2d at 445; *see also North Canton Bd. of Educ. V. Am. Tel. & Tel., Inc.*, 822 F. App'x 324, 328 (6th Cir. 2020).

That is further compounded by the fact that Tompkins concedes that Defendants did not receive any payment, so there is nothing under the terms of the Lease Agreement to remit.  *See* ECF No. 28, PageID.564.

Thus, this claim fails as a matter of law because Tompkins fails to assert any plausible breach.

**5.      Removal of Generator and Transmitter (Counts VIII and IX).**

Lastly, Counts VIII and IX both assert breach of contract claims for removal of equipment.  *See* ECF No. 28, PageID.520-525.  At the heart of this claim is the parties' disagreement over whether the generator and transmitter equipment are considered removable trade fixtures.  *Compare* ECF No. 32, PageID.731-732, *with* ECF No. 35, PageID.768-770.  Tompkins alleges that "all property on the premises, including but not limited to tower, buildings, *generator*, and *equipment* belonged to Tompkins at the time WLAJ-TV LLC purchased the right to lease in bankruptcy." *See* ECF No. 28, PageID.521 (emphasis added).   Defendants contend that the generator and transmitter equipment is exempt from the lease terms because "they are trade fixtures installed at tenant expense" and therefore exempt from having to remain on the premises via the terms of the Lease.  *See* ECF No. 32, PageID.733.

The Lease Agreement provides that

> . . . The Tenant shall not make any alterations, additions or improvements to said premises without the Landlord's written consent, and all alterations, additions or improvements made by either of the parties hereto upon the premises, except movable

22

> office furniture and *trade fixtures put in at the expense of the Tenant*, shall be the property of the Landlord, and shall remain upon and be surrendered with the premises at the termination of this lease, without molestation or injury

ECF No. 28, PageID.535 (emphasis added).  And the Court agrees that it is possible that the generator and transmitter equipment could be trade fixtures.  *See Grand Traverse Cnty. Land Bank Auth. v. Verizon Wireless*, No. 332804, 2017 WL 1908535, at *2 (Mich. Ct. App. May 9, 2017) ("An object introduced onto the realty may become a fixture if it is necessary or at least a useful adjunct to the realty, considering the purpose to which the latter is devoted.").  However, Tompkins alleges that it owns the generator and transmitter – and that it did so at the time the lease began, implying that there was a generator and transmitter already on the premises.  *See* ECF No. 28, PageID.521, 523.  Accepting this fact as true would mean that removal of the generator and transmitter that was on the premises at lease inception but not at conclusion, plausibly states a claim for breach of the terms of the Lease Agreement.

Therefore, viewing the evidence in the light most favorable to the non-moving party, sufficient facts have been alleged such that judgment on the pleadings would not be proper as to Counts VIII and IX at this stage of the litigation.

Accordingly, Counts III, IV, and VII fail as a matter of law and judgment on the pleadings is appropriate on those claims.  However, Counts V, VIII, and IX survive dismissal and will proceed.

23

## C.    UNJUST ENRICHMENT CLAIM (Count X)

Under Count X, Tompkins pleads a claim for unjust enrichment against WLAJ-TV as an alternative to its contract and conversion theories – namely Nexstar/WLNS-TV broadcasted from Tompkins' tower, WLAJ-TV removed the transmitter, broadcast equipment and generator, WLAJ-TV failed to pay rent, and failed to maintain the premises.  ECF No. 28, PageID.525-529.  Defendants seek dismissal of this count arguing "the very conduct Plaintiff challenges is contractually governed, [so] there is no legal basis for seeking equitable recovery."  ECF No. 32, PageID.737.  The Court agrees.

In Michigan, unjust enrichment is defined as one party's "unjust retention of money or benefits which in justice and equity belong to another."  *Tkachik v. Mandeville*, 790 N.W.2d 260, 266 (Mich. 2010) (internal quotation marks and citation omitted).  To proceed on a claim of unjust enrichment, "a plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant."  *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. Ct. App. 2006) (citation omitted).

In the absence of a contract, a plaintiff must show that a direct benefit was provided to the defendant to establish an unjust enrichment claim.  *See A&M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 WL 540883, at *2 (Mich. Ct. App. Feb.

24

28, 2008).  "When successful, the court will 'imply a contract' and require the defendant to disgorge any unjustly retained benefit as restitution."  *P.R.A. Co. v. Arglass Yamamura SE, LLC*, 768 F. Supp. 3d 862, 872 (E.D. Mich. 2024) (internal quotation marks and citation omitted).  However, a party cannot recover under a theory of unjust enrichment when a transaction is governed by a valid contract.  *See Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824, 833 (E.D. Mich. 2014) (citing *Morris*, 729 N.W.2d at 904).

Here, as stated in the Court's Prior Dismissal Order, a valid contract exists between the parties – the Lease Agreement.  ECF No. 21, PageID.409-410. Allowing a third party to use the tower is not a separate and distinct claim from the existing contractual relationship between the parties because the Lease Agreement expressly provides for the terms of subtenancy.  *Id.*  Therefore, the Court finds that the Lease Agreement adequately addresses the dispute as to payment for use of the tower making dismissal appropriate.

Similarly, as argued by Defendants, the transmitter, broadcast equipment and generator would be governed by the "ownership and improvements" terms of the Lease Agreement.  *See* ECF No. 32, PageID.737 (citing ECF No. 28, ¶¶50, 153). The same is true regarding rent payments (ECF No. 28, ¶ 131), and maintenance of the premises (ECF No. 28, ¶¶106-107).  Therefore, because the terms of the Lease

25

Agreement cover the parties' dispute regarding these issues, Tompkins' claims could proceed under a breach of contract theory. *Bowlers' Alley*, 32 F. Supp. 3d at 833.

Accordingly, the unjust enrichment claim (Count X) should be dismissed.

**D.     GUARANTY LIABILTY FOR SINCLAIR (Count XI)**

Finally, under Count XI, Tomkins asserts a claim for breach of the Assumption and Consent Agreement against Sinclair for WLAJ-TV's alleged breaches and "other wrongful conduct". *See* ECF No. 28, PageID.529-530.  Sinclair argues (1) "[it] never agreed to be liable for WLAJ-TV's 'other wrongful conduct' and (2) WLAJ-TV "is not liable for any 'breaches of contract[.]'" *See* ECF No. 37, PageID.817.

Despite having already dismissed the conversion claims and the unjust enrichment claim, the Court agrees that Sinclair is not liable under the terms of the guaranty for "other wrongful conduct." *See supra* Section III.A.  This is because the Assumption and Consent Agreement, as alleged by Tompkins, governs Sinclair's liability to "remain liable to the Landlord [Tompkins] to fully perform *according to the terms of the Lease*."  ECF No. 28, PageID.529 (emphasis added).  Because it is limited to the "terms of the lease," it would only apply to the breach of contract claims and not the remaining claims in the Amended Complaint. *See* ECF No. 28, PageID.569, ¶10; PageID.571-572.

Because three claims remain in this matter against WLAJ-TV (Counts V, VIII, and IX), if WLAJ-TV is found liable for any injury resulting from the Lease Agreement, Sinclair would also be liable as well. *See Wallace Hardware Co. Inc. v. Abrams*, 223 F.3d 382, 401 (6th Cir. 2000). Therefore, Count XI will continue against Sinclair only as to the remaining claims.

## V.

Accordingly, Counts I, II, III, IV, VI, VII, and X fail as a matter of law. However, because sufficient facts have been alleged for a plausible claim under Counts V, VIII and IX, those claims will proceed in this matter against Defendant WLAJ-TV. As a result, Count XI will also proceed against Defendant Sinclair.

Therefore, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions for Judgment on the Pleadings (ECF Nos. 32, 37). Counts I, II, III, IV, VI, VII, and X are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: March 23, 2026                                  s/Brandy R. McMillion
      Detroit, Michigan                          HON. BRANDY R. MCMILLION
                                          United States District Judge